Good morning, may it please the court. My name is Glenda Aldana of the Northwest Immigrant Rights Project. On behalf of Petitioner Pedro Aldana Diaz, I'd like to reserve three minutes for rebuttal. I'm sorry, what's, what's your name again? Glenda Aldana, no relation to the petitioner. Because it has Glenda Madrid here. Aldana Madrid. Okay, thank you, sorry. No, no problem. It's the first, the first last name that controls typically. Yes, I'd like to reserve three minutes for rebuttal. Mr. Aldana fled his native Honduras to seek asylum. Because he was previously removed under an order of removal, he was placed in reinstatement proceedings. During which his previous removal order was reinstated, and he was instructed by the government to wait for the government to set him up for a reasonable fear interview in order to ascertain his claim for protection from removal. However, for almost five years, Mr. Aldana has been waiting for the government to hear his claim to no avail. Diligently pursuing his rights, he secured counsel to represent him in those RFI proceedings. And in order to preserve a future need for judicial review, should it become necessary, he filed this petition within 30 days of Riley B. Bondi. Where the Supreme Court made clear that individuals in similarly situated needed to file petitions for review within 30 days of the reinstatement order. Not as previously understood to be the law in the circuit and many others, which was 30 days from the conclusion of the agency's review of fear based claims. Respondent argues that this court should not entertain Mr. Aldana's petition because it lacks jurisdiction and because it was untimely filed, it may not be equitably told. Respondent is wrong on both accounts, and I'd like to briefly address Rule 26b-2 before focusing the remainder of my remarks on jurisdiction and Navarrete, if that's okay with the court. So quickly with respect to Federal Rule of Appellate Procedure 26b-2, which is Respondent's primary argument to claim that the Erwin presumption has been rebutted with respect to the filing deadline at 1252b-1. The Respondent's argument is wrong for two reasons. First, because there is no tension between Erwin and Rule 26b-2 as it reflects separation of powers principles. The types of filings mentioned in b-2 implicate a court of appeals ability to hear certain cases in their entirety. Yet it is Congress that has the authority to set the lower federal court's jurisdiction. And so the rule makes clear that courts may not do that unless specifically authorized by law. That is, unless Congress instructs them to. And the way Congress does this is by drafting statutory language that is consistent with equitable tolling and does not rebut the Erwin presumption. Recognizing the Erwin presumption here does not require reading anything into the statute, as this court has recognized in Smith v. Davis, where it noted that where Congress has not acted to preclude equitable tolling, it intended for it to apply and to be employed consistent with standard equitable concepts and governing precedent. Second, even if Rule b-2 were to be considered to be in conflict with Erwin, it simply is insufficient to rebut that presumption. Because Supreme Court case law has said time and again that the analysis concerns congressional intent with regard to a specific statute of limitations. And that analysis requires looking at that specific statute, its text, its context, and its structure. Rule 26b-2 was not written by Congress, and it is not statute-specific. It is a general prohibition on extending deadlines for certain types of notices and petitions, not the statute of limitations at 1252b-1 in particular. And as was stated earlier in the earlier argument, if Rule 26b-2 so plainly applied, the Supreme Court would not have needed to remand the question of whether equitable tolling was permitted in Rojaro v. Department of Defense, yet it did so. And this court in Alonzo Juarez, if Rule 26b-2 so clearly applied in this context, this court would not have left that question open at footnote 3. So let me see if I'm tracking your argument, counsel. I take it then that's the distinction you would make for nutraceutical. The nutraceutical was about court rules, not a statute. And so if we're applying the Irwin presumption and we're directed by the Supreme Court to look beyond even the statute in question, but we should only look to other statutory provisions, not to court rules, that that's something separate and apart from the Irwin analysis. Is that the argument you're making? Yes, Your Honor. And in fact, Haro was decided after nutraceutical, which is from 2019. And Haro could have easily said this is not amenable to equitable tolling, see nutraceutical, see Federal Rule 26b-2. But the court did not do that. And in fact, nutraceutical. Which case are you referring to? Haro v. Department of Defense, in which case the court found that the 60-day statute of limitations for filing a petition for review of a Merit System Protection Board decision was not jurisdictional and remanded the equitable tolling question. And notably there, it noted that rebutting that presumption would be a high bar. And one more point about nutraceutical, Your Honor. The fact that that case dealt with federal rules and not a statute meant that the Irwin presumption did not factor into the court's analysis at all. And in fact, the question that the court asked was not whether equitable tolling was inconsistent with the statute, but whether the text of the rule left room for such flexibility. So it was looking at it exactly backwards. It was looking at whether equitable tolling could be read in, not whether equitable tolling should be read out, which is what the Irwin presumption in the analysis requires us to look at. What about counsel from the prior arguments point that Congress was aware of Rule 26b-2 in the context of drafting this provision and might have incorporated that thinking. We don't need to say anything more because there's already a court rule that applies a more stringent requirement. Your Honor, there's simply no support for that. The rule was not written by Congress. And the case that the government relies upon, Ojave Department of Defense from the federal circuits, 20 years old. Mo spoke about Congress expressing a general intent. But the Supreme Court has told us time and again that the analysis is statute specific. Just last month in Enbridge, the court said the presumption is rebutted where tolling would be inconsistent with the text of the relevant statute. And the Sixth Circuit and Oxlack-Perez and the D.C. Circuit and Nelson v. FCC both found that the analysis, the logic of nutraceutical did not extend to statutory limitations periods because, again, nutraceutical was about federal court rules. And so there is no tension really between Rule 26b-2 and recognizing the Irwin presumption. But even if there were, the general intent to not allow for tolling of certain notices and petitions is insufficient to meet the high bar that is required to meet and to demonstrate that the Irwin presumption has been rebutted. But as the Sixth Circuit found in Oxlack-Perez, in nutraceutical it was much easier to find that equitable tolling did not apply because there was no presumption to begin with. And that's why general rules were sufficient to demonstrate that equitable tolling have no place in extending the rules there. And so if I may, I would like to move on to jurisdiction unless the court has any questions about tolling. So respondent argues and a panel of the circuit agreed in Navarrete v. Bondi that this court has no jurisdiction to review a petition for review where a noncitizen is not raising a challenge to the underlying removal order. And I recognize there's been a call to rehear Navarrete on bank. And what we would first ask is that you consolidate our case with Navarrete so that it may be heard on bank alongside it because this case presents arguments that bear directly on the ultimate question in Navarrete that were not argued and presented to the court there. I'm not sure you want to do that. I would think you would want to argue as to why your case is distinct from Navarrete as opposed to wanting to consolidate it because they're – as I see it, these are different situations. Your client is in the same camp as the last group. He is challenging the reinstatement order on what you present are colorable grounds. And so that seems to me to be different from what happened with the Navarrete panel. So I don't know. I mean I'm not quite sure why we would want to consolidate any type of en banc proceedings with this case. Sure, Your Honor, and point well taken. That was actually my secondary point, which is we actually do not believe Navarrete controls here. Why don't you speak to that? Yes, and that is because Mr. Aldana raises a claim that under Monsalvo Velazquez, which the Supreme Court decided last year, he is actually – individuals in reasonable fear proceedings challenging the outcome of those proceedings are in fact challenging a term of the removal order. And under Monsalvo Velazquez, courts pretty plainly have jurisdiction over those claims. And what Monsalvo Velazquez did last year was recognize or clarify, I suppose, a different way of conceptualizing jurisdiction over petitions for review that bear here. Because traditionally in tracking this court's language with respect to jurisdiction over RFI proceedings, this court has tracked the language of 1252A1 and B9. 1252A1 provides for judicial review of a final order of removal. And the case law of the circuit is clear that reinstatement orders are final orders of removal. And 1252B9 provides that PFRs are the sole vehicles for judicial review of all questions of law, in fact, arising from any action taken or proceeding brought to remove a noncitizen from the United States. And when this court has spoken of jurisdiction, it has tracked that language. In Ayala v. Sessions, this court said, we clearly have jurisdiction over timely petitions for review of reasonable fear determinations that arise out of reinstatement of ordinary removal orders. And Monsalvo recognized this – the fact that A1 and B9 are read together when it said that 1252 authorizes courts to review final orders of removal and address questions of law arising from them. And then it quoted directly to A1 – it cited directly A1 and B9. And then it said, and pretty plainly that language permits a court to review all terms in a final order of removal without requiring a challenge to removability. Here, the reinstatement order, page 1 of the administrative record, by its plain text decrees that Mr. Aldana is subject to removal in accordance with section 241C5 of the INA and 8 CFR 241.8. And that regulation provides for the reasonable fear process to ascertain a noncitizen's fear of persecution and torture at subsection E and at subsection F notes that the execution of the reinstated order of removal shall be administered in accordance with this part. So just as the Supreme Court had a final order specifying that the government could remove an individual, so does this court have a final order specifying that the government may remove Mr. Aldana in accordance with certain procedures and a petition asking the court to settle a dispute over what that order means. And so for that reason, we believe that Navarrete does not control here, and Mr. Aldana is in fact raising a colorable claim challenging the final order of removal. And just to be clear, you know, you're not saying that a challenge to the reinstatement order would be frivolous or without any merit. No, Your Honor. The challenge is to the RFI process that is part of that order of removal, that is a term of that order of removal and that is provided for in that order of removal. And so, no, it would not be frivolous in any way. Unfortunately, at this point, we're left to speculate as to what the challenge might be because the government has not allowed Mr. Aldana the opportunity to present his claim. But he is acting diligently to pursue to preserve that right to judicial review because he is bringing literal life and death claims to prevent his removal. And that is, I guess, Your Honor, with something else that I would like to emphasize is we believe that Navarrete was wrongly decided. We don't believe Navarrete controls here. But what we would like to underscore is that the government's position in this case would run contrary to decades of practice, not just by this court, but by the Supreme Court. In Santos-Zacaria, the Supreme Court exercised jurisdiction over claims that arose out of the reinstatement process, but that did not challenge the reinstatement order. The noncitizen there only challenged the withholding only claims. In Ayala v. Sessions, this court exercised jurisdiction in that same posture. In Uc Encarnacion v. Bondi, post-Riley, this court exercised jurisdiction in the similar context. And it's very worrisome because the government's position extends beyond the reinstatement process. It goes and raises the question as to whether individuals in regular 240 removal proceedings are actually able to file petitions for review if they concede removability, as many of them do, and only challenge the agency's determinations as to withholding of removal or CAPT. And that is, again, contrary to the practice in this court. And this court and the Supreme Court have told us that in order to do this, Congress must speak clearly and there must be clear and convincing evidence that it is Congress's intent to foreclose judicial review. And simply there is no there is no indication from Congress that that is the case. And I see that I am unclear whether my time for rebuttal is included in here. No, it's not. I mean, yes, it is. So you have one minute. I would like to reserve the rest of my time. Thank you. Good morning. May it please the court. Robert Tennyson for the government. Good morning. This court doesn't need to address any of these issues. Really, this court needs to just look at whether or not whether it's colorable or not, whether tolling applies or not. Really, the petitioner hasn't made a challenge to the reinstatement at this point. There is none. And any prospective challenge to withholding is down the road. If this were just an everyday case in which a petitioner filed a PFR and then filed a brief in which they said, you know, a PFR from, say, asylum withholding and cap and filed a brief that said we don't challenge any of those things. We would summarily this court would summarily dismiss it. We would file a motion for summary dismissal and this court would grant it because they forfeited or waived any challenge to any substantive issue in the underlying order or in the order that's before the court here. The only order that's before the court is a reinstatement order. And at the very least, putting aside whether or not you need something colorable, they need to offer a challenge. They've waived and forfeited a challenge to that order. Well, let's go through that because it looks like a petitioner here. And the petition states that he petitions for review by this court of the removal order entered by U.S. Immigration and Customs Enforcement, a component agency of the Department of Homeland Security pursuant to 8 U.S.C. Section 1231 A5. Then he goes on to say that the order was issued on September 14, 2021, and encloses a copy of the DHS reinstatement order pursuant to 1252 C's requirement that a petition for review and order a removal shall attach a copy of this order. So it seems like he's petitioning for review of the DHS reinstatement order, not just a withholding a removal or cat order, which also doesn't really exist because his reasonable fear proceedings haven't commenced, correct? Insofar as I'm aware, they've not commenced. All right. So I'm trying to figure out under our precedent, a reinstatement order seems to be a final order of removal. I think the case of Vega Arguello Bar says that. We have repeatedly held that the phrase final order removal in 1252 A1 covers both a final order removal and a final restatement order. I don't know that Riley disturbs that holding. It's clarified. Riley is clarified that an order removal must have the same characteristics as an order of deportation, which is defined as, quote, an order concluding that the noncitizen is deportable or ordering deportation. Right. So I'm trying to figure out the DHS order says in accordance with Section 241 A5 of the Act of Immigration Nationality Act, you are removable. As a noncitizen who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and are therefore subject to removal by reinstatement of the prior order. So all that seems to fall squarely within the definition of an order, quote, an order concluding that the noncitizen is deportable or ordering deportation that Riley states clearly in Riley. So I want to understand your view. I was trying to understand it from the previous your friend on the previous case in your position, because it seems like the petitioner here checked that he did not wish to make a statement contesting his determination rendering the order final. So tell me, give me your best response. OK, so I think there are three, maybe four questions in there that I that to respond to. The first thing has to do with the petitioner complied with Rule 15 under this court and identify and did for purposes of Rule 15 follow the requirements. He attached a copy of the state. He attached a copy of the reinstatement order. And he mentioned that he was challenging that. I don't think we're challenging that part of this. What we are saying is that in the opening brief and in the reply brief, the petitioner has effectively forfeited or waived any challenge to that reinstatement. They're not calling any they're not calling into dispute anything about the reinstatement itself. And right now, that's the only order. So that's part one. Well, but you respond to the government response to that. In your brief, so I think that argument has to be set aside under our case law because you did address it. So go to your next point. OK, so the second point on Riley and why. Let's start with Nasrallah, Guzman, Chavez and Riley are clearly inconsistent with this court's prior precedent on how it construes reinstatement. First, let's look at what Riley did right. We had previously or at least beginning before Nasrallah. We had thought that we wait until the end of proceedings. We get to the end of withholding only proceedings. And at that point, we have a final order. And this court had thought, that's your final order. We hooked jurisdiction at that point. What Nasrallah begins to do is say, well, we're going to look at the statutory definition. You know, 1101A47A to figure out whether or not that is a final order of removal or it's something else. And so under that, well, a CAD order is not. And there's other reasons for thinking that. There's a particular history with regard to CAD orders and how the real ID handles those and separates them out and then makes them subject to petitions for review. Because I don't know, previously in a number of circuits, you had to go into habeas to get those, to have those reviewed. Then we move to Guzman-Shavez, right? And that deals with withholding only. It has to do with petitioners and post-removal order detention and whether or not someone who's sitting around waiting for withholding only proceedings is still subject to detention, pre-removal detention or post-removal detention. And the determination is, again, well, that withholding only thing may not be a final order of removal. We're looking specifically at 1101A47, again, to determine whether that is and it's not. May not be. Or is not. Well, you said may not, but that's very interesting that you said may not. Because in Guzman-Shavez, there was this little hook with regard to, well, we're only talking about a detention provision. What Riley does is say, no, it's not just detention provisions. It is what is part of the final order of review. And that's what makes Riley different. Riley says these things that were before and how we conceived of what a final order is before. You shouldn't be doing that. I just read your language from Riley, though, that is inconsistent with what you're saying or doesn't quite match up. And you have a high bar here on Marmelidis' ban. I understand the argument that you're making, but you have to really hit the target here. And I'm not sure, in light of the statements that I just read to you from Riley, that we can be that clear. I understand you might be, but I'm not sure I can be that clear. So I appreciate your efforts here, though. Yes. So I think that really the key thing is just a call for this court to go back and look at these specific provisions. The deportability. What is an order of removal? And it's an order of finding someone removable. I mean, or it is a finding of removability or an order. It's an order of finding someone – finding removability or that ordering someone removed. Well, so that's – That's the key. No, no. That's your problem because it's disjunctive. So it's not just about removability. Right? An order of removal is also about the order that's actually ordering someone to be removed, and that is a reinstatement order. I would – And so – because the other problem that I had, and I mentioned this in the last case, is Riley is not a reinstatement case. It says nothing about – it doesn't speak to the nature of a reinstatement order, whether it's in the same vein as something else or not. And so how – if neither Riley nor Nasrallah or – with the detention – Guzman-Chavez.  If none of those are reinstatement order cases, how can this trilogy be enough to overcome clear precedent for the Ninth Circuit? All right. Let me sort of do – think about how we got to Riley in the first place, right? Because Santos-Zacharia, there we had the exhaustion provision, right? And we had argued that it was jurisdictional for the longest time. And what came about in Santos-Zacharia's – it was this response that, well, no, just because – just because of the nature of the provision. If it's going to be jurisdictional, it needs to be some clear rule that it's jurisdictional, right? And that upset – that upended everything. But one thing that it did is this court subsequently, under Miller v. Gamney, found that Santos-Zacharia changed how we should look at the 1252b1 deadline. That, hey, that's not – that's a drive-by jurisdictional rule. We should consider that to be no longer jurisdictional, no longer a jurisdictional bar. But that it is a – that it is subject to waiver. It's a mandatory bar. It's subject to waiver and so on and so forth. And by the same token, I think that in the same way that the analytical principle that sits behind Santos-Zacharia allowed this court to, under Miller v. Gamney, say that 1251b1 is no longer a jurisdictional rule. That that same sort of analytical principle when we look at 1101a47 lets us do the same thing here. So – and I see your point with regard to – it's not just defining removability. But on that second point, I mean if we look specifically at the reinstatement statute, it no one – it nowhere says that someone should be ordered reinstated or anything like that. Rather, it – or it states that if the attorney general finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily under an order of removal, the prior order of removal is reinstated. That's it. There is no order of reinstatement. There is no the attorney general shall order the reinstatement under the final – under the prior order. It's just that if you make these findings, that previous order gets reinstated. It's not subject to review or reopening. And I assume that's before the administrative agency. And so that's the reason why we say that – why the government's position is that we don't – that one, this court can look at it again under Miller v. Gamney. And two, that this actually meets that high standard. That there's no determination of removability here. I think we all agree that that's the case. And insofar as whether or not it's an order of removal, well, it's – it is reinstated, right? The findings are not you're being found removable and therefore we're ordering it. It's – these findings are illegal and so forth. In Monsalvo v. Velazquez, the court made clear that challenges to removal orders does not mean that one has to challenge removability, which I take to be kind of a core argument in your presentation today. It said, no, we're looking at final – you're challenging final orders of removal. The statute doesn't speak to removability. It's talking about the order of removal. And so here you have the petitioner who is challenging the order of removal, set aside whether you agree that it's an order. It shouldn't matter that – whether he's challenging removability itself, if he's challenging the order of removal. And on top of that, if the notice of removal is citing to the regulations that include a reasonable fear interview, then it's – then petitioner is challenging an aspect of that order of removal. Why isn't that enough?  So this is the four corners argument, right? Because really what we're looking – I think the petitioner's argument is at the end of the day, what we're really looking at when the order of removal is we're looking at what that four corners of the document is. And we're trying to figure out if any aspect of it is wrong. And I think that's what you're saying to me as well, correct? I'm saying the order of removal encompasses all the different components of it. And part of it is a reasonable fear determination. And another part of it is whether someone is removable, the aspects that would make him removable. In the same way that Monsalvo Velasquez brought in the lens of what is an order of removal, some of them – some of those elements might be removability and other things might be other aspects. And if we're reviewing the order, the challenge to the order, it's all of those components, not just the removability aspects. I think there are two responses to that. First, I think Monsalvo sort of – the Supreme Court decision in Monsalvo carved out sort of these cat-only determinations specifically and said, look, we're not – that the dissent says something about that. We don't have to address that today because they're different. But second, there was the other point that in Monsalvo they were talking about the final order of removal out of standard 240 proceedings and ultimately how you construed voluntary departure, which had to do with – which somehow affected the manner in which someone is removed. But not the removability. Right. There's nothing about voluntary departure that says I should not be removed at all. It's whether I should be allowed to be removed under a certain mechanism. Right. And that's my point here. The final – the challenge to the final order of removal here is a challenge to a certain aspect of it, and that's the reasonable fear process, which has yet to play out. Which has yet to play out. And that sort of makes this difficult. I think Judge Roehrle has a question. Oh, I'm about – yes, Judge Roehrle. So, okay. I think – I'm looking at Aldana Diaz's – Aldana – his reinstatement order. And I think why in part this – we think that an order – a reinstatement order is an order of removal is because basically that's what it says. It says decision, order, and officer certification. And then there's – the next line is having reviewed all available evidence, the administrative file, and any statements made or submitted in rebuttal. I have determined that the above-named alien is subject to removal. So, he's decided he's subject to removal through reinstatement of the prior order. And then he signs that. And that's his order. And it's that he's subject to removal. Just like the original, only it's through a different process. And I think if the agency had to have seen this as an order of removal to have written this order. It's interesting you're right that the language of the reinstatement order is, you know, from the government's perspective on how reinstatement orders should be read. Not ideal. But I believe that really if you look at it carefully, you know, it says that the alien is subject to removal under the reinstatement of the earlier order. It's not finding that the person's – that the alien is removable or that the individual is removable. What it's saying is that prior order is now – you know, now has effect. And insofar as that's the case, that's not a finding of removability. But again, this court doesn't need to resolve that. And I know your position, Your Honor, that we may be beyond this. But at bottom, there isn't a challenge. The petitioner didn't check a box saying that they were going to challenge the removability findings before the agency. She's not challenging anything with regard to the reinstatement now. And so there's nothing for this court. Ultimately, this is a case where there isn't a challenge to the underlying decision that is currently before the court. Thank you. Thank you, Your Honors. Just really quickly, Respondent's argument does not engage – barely engages with Monsalvo, which makes clear that a challenge to removability is not required and that a challenge to a term of the final order of removal is sufficient. And here, Mr. Aldana has stated such a challenge. Additionally, this court has found that the original removal order may not be executed against a noncitizen again unless it is reinstated by an authorized official. And it has found for a while that under Castro-Cortez D.I.N.S. and other cases that reinstatement orders are final orders of removal. Nasrallah did not change this. In fact, Nasrallah reinforces finding judicial review available here because Nasrallah rejected the government's argument that if a CAT order was not a final order and it was not merged into a final order, then no statute would allow the court to exercise jurisdiction. The court expressly rejected that. And I'd like to close, Your Honors, by just reminding the court of what's at stake here. The Supreme Court has recognized time and again that deportation is all the more replete with danger where individuals are claiming persecution or torture if they are returned to their home countries. This court has time and again affirmed the availability of judicial review for individuals in this very posture by recognizing that review in the courts of appeals is essential to the proper constitutional functioning of the system. Nothing in Riley changed that. And this court in Alonzo Juarez also said that Congress has not provided any indication that judicial review should be foreclosed in this context. Again, nothing has changed. And the government's arguments to the contrary do not address this. So what's the relief that you're seeking? Your Honor, we would ask that the court find that it has jurisdiction over Mr. Aldana's petition, that it may equitably toll the filing deadline, and that it hold the petition in abeyance in accordance with the Supreme Court's instructions in Riley because we recognize the reasonable fear proceedings have not even commenced. Mr. Aldana is still waiting. And so we would ask that you hold this petition in abeyance. Thank you. Thank you so much. Ms. Aldana Madrid and Mr. Tennyson, thank you for your oral argument presentations in this case. The case of Aldana Diaz versus Blanche is now submitted.
judges: MURGUIA, WARDLAW, SANCHEZ